# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 12, 2013

No. 13-30231
Summary Calendar

Lyle W. Cayce
Clerk

ROY HUDSON,

Plaintiff-Appellant

v.

CLECO CORPORATION,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-01699

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Roy Hudson appeals the district court's judgment granting Cleco Corporation's second motion for summary judgment as to Hudson's claims, advanced under 42 U.S.C. § 1981, for denial of overtime and hostile work environment. We AFFIRM for essentially the same reasons given by the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30231

## I. FACTUAL AND PROCEDURAL BACKGROUND

Roy Hudson has been employed by Cleco since 1988. In 2009, Hudson and twelve other current and former African-American employees of Cleco filed suit against Cleco alleging that the company engaged in various forms of racial discrimination, age discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, and the Louisiana Commission on Human Rights. In 2010, Cleco filed a motion for summary judgment, which the district court granted in part, and denied in part. As a result, Hudson's Title VII, ADEA, and state law claims were dismissed, leaving only claims Hudson advanced under 42 U.S.C. § 1981 for failure to promote, discrimination, retaliation, and hostile work environment.

Cleco subsequently filed a motion to sever the claims of the various plaintiffs, which the district court granted. In 2012, Cleco filed a second motion for summary judgment in Hudson's case, seeking dismissal of all remaining claims. The district court granted the motion in 2013, and Hudson timely appeals.

## II. STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo. *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836–37 (5th Cir. 2009). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A factual dispute is 'genuine' if a reasonable trier of fact could return a verdict for the nonmoving party." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). In considering a summary judgment motion, we view the evidence in the light most favorable to the nonmoving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*,

No. 13-30231

453 F.3d 283, 285 (5th Cir. 2006).   However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).   "[W]e may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## III.  DISCUSSION

### A.  Successive Summary Judgment Motions

Hudson first argues that the district court erred in allowing Cleco to file a second motion for summary judgment after it partially denied Cleco's first such motion.   According to Hudson, Cleco provided nothing in its second summary judgment motion demonstrating that new evidence was acquired after the court partially denied the first motion, nor did Cleco indicate that a subsequent change in the law supported summary judgment under the second motion.   Under such circumstances, Hudson contends that it was error for the court to permit Cleco to file the second summary judgment motion.

Hudson cites no authority for his position, however, nor have we discovered any.   To the contrary, we repeatedly have held a "district court has broad discretion to control its own docket." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012); *see also Edwards v. Cass Cnty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990).   Indeed, as pertaining specifically to a district court's decision to permit successive summary judgment motions, we previously have explained that "[s]uch a determination, particularly regarding questions of the timing and sequence of motions in the district court, best lies at the district court's discretion." *Enlow v. Tishomingo Cnty., Miss.*, 962 F.2d 501, 507 (5th Cir. 1992); *see also Hill v. Cleco Corp.*, No. 13-30249, 2013 WL 4017416, at *1 n.1 (5th Cir. Aug. 8, 2013) (per curiam) (unpublished).   Accordingly, we find

no error in the lower court's decision to permit, and rule on, Cleco's second summary judgment motion.

## B. Claims Advanced Under 42 U.S.C. § 1981

Hudson next argues that the district court erred in granting Cleco's summary judgment motion in connection with his claims advanced under § 1981. In particular, Hudson contends that genuine disputes of material fact precluded summary judgment as to his claims for denial of overtime and hostile work environment.[1]  We address each of these claims in turn.

### (1) Denial of Overtime

In support of his discrimination claims, Hudson first contends that Cleco denied him the opportunity to work overtime on two occasions in 2007. Addressing this claim requires that we pause briefly to explain how Cleco manages its overtime scheduling.  To support its after-hours maintenance requirements, Cleco utilizes a "call crew," or list of employees who may be called to work overtime as necessity dictates.  Call crews are assigned either "primary" or "back-up" status for two-week intervals, on a rotating basis.  Typically, when overtime is required, primary call crew members are contacted first, after which back-up call crew members may be contacted if additional assistance is needed. On occasion, an employee who is not on either the primary or back-up call crew may be contacted to work overtime even though no member of the call crew has been contacted to work overtime.  Among other reasons, this can occur if: (1) an employee with specific skills is needed; (2) an employee has recently worked on

---

[1] The district court also concluded that various other of Hudson's "miscellaneous" § 1981 discrimination and retaliation claims were untimely.  Although the district court's conclusion on that score is without error, we need not address those claims in detail, as Hudson has abandoned them on appeal.  *See Mackey v. Astrue*, 486 F. App'x 421, 423 (5th Cir. 2012) (per curiam) (unpublished) ("Because [the appellant] fails to address the district court's reasons for dismissing his claims, he has abandoned all issues on appeal.").

No. 13-30231

an issue relating to the equipment needing repair; or (3) an employee needs to gain experience on a piece of equipment.

In September 2007, although Hudson was on the call crew list, Trent Alexander, a Caucasian male, was called to work overtime despite not having been on the call crew list.  After Hudson complained to a manager, the manager investigated and discovered that Alexander was called in so that he could gain experience working on the piece of equipment that was in need of repair.  Thus, although Hudson points to this incident as evidence of racial discrimination, Cleco's position is that Alexander needed the experience to enhance his job skills.

At another time in 2007, Hudson was again on the call crew list when an employee was needed for an after-hours welding job.  Although Hudson volunteered for the assignment, he was told he was too tall for the job.  According to Cleco, only someone of a smaller stature could have performed the assignment, though Hudson maintains that the real reason he was denied the opportunity to work overtime was because of his race.

"Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981 . . . , are governed by the same analysis as that employed for such claims under Title VII." *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).  For claims of discrimination based on circumstantial evidence, as here, we apply the familiar *McDonnell Douglas* burden-shifting analysis.  *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination.  If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence

that the employer's proffered reason was mere pretext for racial discrimination.

*Id.* at 317 (citations omitted).  To establish a prima facie case of discrimination, a plaintiff must demonstrate that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

Here, the district court held that Hudson failed to establish his prima facie case, because Cleco's failure to allow Hudson to work overtime on the two previously discussed occasions did not constitute an "adverse employment action."  Alternatively, the court concluded that even if Hudson had demonstrated that the *de minimis* denial of overtime qualified as an adverse employment action, he still could not prevail, as he could not rebut Cleco's legitimate rationale for its employment-scheduling decisions.  Because we agree with the court's alternative rationale, we need not decide whether Hudson has established a prima facie case under *McDonnell Douglas*.

As mentioned, Cleco has presented legitimate, non-discriminatory rationales for its decisions not to call Hudson into work on the two complained-of instances.  In the first case, Hudson was not called in because the company determined that another employee, Trent Alexander, needed the experience provided by the overtime opportunity.  In the second case, Hudson was deemed too tall to perform the task required by the overtime assignment.  Hudson does not contest these facts, nor does he attempt to rebut the legitimate rationale proffered by Cleco for its employment decisions.  Rather, Hudson merely reasserts his allegation that the true reason he was denied overtime work was

because of his race. Such a conclusory allegation is insufficient to create a genuine dispute of material fact. *See McCoy*, 492 F.3d at 562.

## (2) Hostile Work Environment

Hudson also alleges that the district court erred in granting summary judgment in Cleco's favor as to his § 1981 claim for hostile work environment. To establish a claim of hostile work environment, a plaintiff must show that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

Although Hudson references various purported instances of racism in the Cleco workplace, the district court correctly found these allegations to be "either conclusory statements of racial discrimination, inadmissible hearsay, unsubstantiated assertions, or statements that do not relate personally to Hudson." Additionally, these generalized allegations "were neither 'physically threatening or humiliating' towards [Hudson], nor did the harassment 'unreasonably interfere[] with [his] work performance.'" *Hernandez*, 670 F.3d at 654 (quoting *Ramsey*, 286 F.3d at 268). Thus, as the district court properly concluded, Hudson's allegations, even if true, generally are not sufficiently severe or pervasive to have altered the terms and conditions of his employment with Cleco. *See Faragher*, 524 U.S. at 788.

No. 13-30231

The sole allegation Hudson advances that arguably precludes summary judgment involves a hangman's noose that was displayed in Cleco's Crowley, Louisiana, training center in 2007. Under the proper circumstances, such an incident might constitute an "extremely serious" isolated event causing a discriminatory change in the terms and conditions of one's employment. *See id.*; *see also Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). As reprehensible as the incident was, however, we need not decide whether it alone would support a hostile work environment claim, because Hudson has not presented competent summary judgment evidence demonstrating that the noose was associated with his specific workplace environment.

Hudson does not present any evidence that he saw the noose or that its display was directed at him. To the contrary, Hudson himself vaguely stated that he merely "heard talk" of it, and the record is devoid of any evidence supporting the contention that Hudson was at the training facility when the noose was discovered. Furthermore, at the time of the incident, Hudson admittedly did not complain of or report it to Cleco, nor did he ever tell his coworkers about it. In fact, as Cleco notes, Hudson's first reference to the noose appears to have been made in an affidavit that contradicts Hudson's deposition testimony. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984) ("The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony."). Accordingly, we conclude that Hudson has not supported his claim with competent summary judgment evidence. *See Hill*, 2013 WL 4017416, at \*2.

8

No. 13-30231

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.