# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 12, 2013

No. 13-50195
Summary Calendar

Lyle W. Cayce
Clerk

JARIEL CASTILLO; COLUMBA CASTILLO,

Plaintiffs-Appellants

v.

OCWEN LOAN SERVICING, L.L.C.; FEDERAL HOME LOAN MORTGAGE CORPORATION,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:12-CV-559

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Jariel and Columba Castillo appeal the district court's judgment dismissing their complaint against Ocwen Loan Servicing, L.L.C., and Federal Home Loan Mortgage Corporation for breach of a mortgage contract. For the reasons that follow, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50195

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jariel and Columba Castillo entered into a mortgage contract in August 2008 with Taylor, Bean & Whitaker Mortgage Corporation encumbering the real property located at 21311 Liguria Drive, San Antonio, Texas ("the Property"). Taylor, Bean & Whitaker later transferred and assigned the note and liens securing the note to Ocwen Loan Servicing, L.L.C. ("Ocwen").

Less than two years after obtaining their mortgage, the Castillos fell behind on their monthly payments. In November 2010, the couple filed for bankruptcy. Ocwen allegedly informed Jariel Castillo that if he dismissed his bankruptcy petition, it would modify the terms of the mortgage loan, and Ocwen sent the Castillos a proposed Loan Modification Agreement ("the Agreement"). The Castillos dismissed their bankruptcy petition and signed and returned the Agreement on November 26, 2010. On November 30, 2010, the Castillos made their first mortgage payment under the terms of the Agreement.

On December 17, 2010, the Castillos received an account statement from Ocwen that purportedly did not reflect the terms of the Agreement. When Jariel Castillo contacted Ocwen to discuss the discrepancies, the representative allegedly told him that the information would be corrected in his upcoming January 2011 account statement. However, no January 2011 account statement arrived. Jariel Castillo called Ocwen for guidance only to be told that he should continue to pay the amount reflected under the Agreement. The Castillos made additional payments in February, March, and May 2011. During this period, the Castillos never received a signed copy of the Agreement, despite contacting Ocwen five separate times to notify them of this fact.

In September 2011, Ocwen foreclosed on the Property, and the Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased the home. The following January, Freddie Mac filed a Petition for Forcible Entry and Detainer

No. 13-50195

against the Castillos in Texas state court and received a judgment for possession of the Property.

On May 10, 2012, the Castillos sued Ocwen and Freddie Mac in Texas state court for breach of contract, wrongful foreclosure, and fraud. They attached to their complaint an affidavit from Jariel Castillo detailing his interactions with Ocwen; a copy of the Agreement signed only by Jariel Castillo; five account statements from Ocwen; a Default Notice Letter; and a payment coupon. The state court entered a temporary restraining order to prevent the eviction of the Castillos from the Property on May 10, 2012, and a month later, Ocwen and Freddie Mac removed the matter to the District Court for the Western District of Texas. Ocwen and Freddie Mac then jointly moved to dismiss the Castillos' complaint for failure to state a claim, or, in the alternative, for a more definite statement. The Castillos never filed a response in opposition to the motion.

The district court granted the motion and dismissed the case with prejudice on August 7, 2012. It held that the complaint, including the attached exhibits, failed to state facts to support specific elements of each of the three claims. With respect to the breach of contract claim, the court found that since the Agreement fell under the statute of frauds, and since the Castillos had neither produced nor alleged that there was a written copy of the Agreement signed by Ocwen, the Castillos had not pled the existence of a valid contract. Even if a valid contract existed, the court further concluded that the Castillos' allegations revealed that they had breached the terms of the Agreement since they had not made mortgage payments to Ocwen after May 2011.[1]

---

[1] On appeal, the Castillos do not address the district court's dismissal of their wrongful disclosure and fraud claims. Since the Castillos have abandoned these claims on appeal, we need not address them. *See Mackey v. Astrue,* 486 F. App'x 421, 423 (5th Cir. 2012) (per curiam) (unpublished) ("Because [the appellant] fails to address the district court's reasons for dismissing his claims, he has abandoned all issues on appeal.").

No. 13-50195

The Castillos moved to alter or amend the judgment, arguing that under the doctrine of partial performance, the Agreement was enforceable. The district court rejected the Castillos' partial performance argument, reasoning that the Castillos' sporadic payments did not constitute partial performance. The district court reiterated its conclusion that even if there were a valid contract, the Castillos breached that contract when they ceased payments after May 2011. Lastly, it rejected the Castillos' contention that Ocwen breached the Agreement in early 2011, before the Castillos stopped making their mortgage payments.

A month after the district court denied the Castillos' motion to amend, the Castillos timely appealed.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of a motion to dismiss de novo. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). In reviewing the complaint, we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Id.* The facts taken as true must, however, "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Id.* at 682–83; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

No. 13-50195

## III. DISCUSSION

The Castillos appeal the district court's dismissal of their breach of contract claim for substantially the same reasons contained in their motion to amend or alter the judgment. First, they argue that the statute of frauds does not bar the enforcement of the Agreement since their payments under the Agreement constituted partial performance. Second, they claim that Ocwen breached the Agreement in early 2011, suggesting, but not explicitly stating, that this justified their later failure to make payments. Additionally, the Castillos make generalized arguments that they satisfied the pleading standards and that Ocwen and Freddie Mac are on notice of the claims against them.

A breach of contract claim under Texas law requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *see Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex. App.–Corpus Christi 2008, no pet.) (citing *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex. App.–San Antonio 1998, pet ref'd)). When the contract at issue is a loan agreement or a material modification to a loan agreement that exceeds $50,000, the contract is subject to the statute of frauds, rendering it unenforceable unless it is in writing and signed by the party against whom enforcement is sought. *See* Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2009); *Ramming v. JPMorgan Chase Bank, N.A.*, CIV.A. H-10-5011, 2012 WL 1122791, at *3 (S.D. Tex. Apr. 3, 2012) (citing *Foster v. Mut. Savs. Ass'n*, 602 S.W.2d 98, 100 (Tex. App.–Fort Worth 1980, no writ)).

There are exceptions to the statute of frauds, and contracts that have been partially performed may be enforceable even in the absence of a signed, written document. *See Sewing v. Bowman*, 371 S.W.3d 321, 346 (Tex. App.–Houston [1st Dist.] 2012, pet. dism'd). The court should enforce an oral agreement when

"denying enforcement would itself amount to a fraud." *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App.–Dallas 2009, pet. dism'd w.o.j.) (citations omitted).  To trump the requirements of the statute of frauds, the partial performance must "be 'unequivocally referable' to the alleged oral agreement and corroborate the existence of that agreement; they 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced.'" *Id.* (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439–40 (Tex. App.–Dallas 2002, pet. denied)).

The Castillos have not pled facts sufficient to allege the existence of a valid contract, which is a crucial element of a breach of contact claim.  They concede that the Agreement is subject to the statute of frauds; however, the copy of the Agreement submitted with their complaint was not signed by Ocwen, and they have not alleged that Ocwen signed the Agreement.  They attempt to skirt the statute of frauds by raising the doctrine of partial performance, pointing to their five payments between November 2010 and May 2011 as performance of their obligations under the Agreement.

The district court properly concluded that the Castillos' five payments were not unequivocally referable to the terms of the Agreement.  In so holding, the court noted that the payments could have been made to satisfy the August 2008 mortgage contract.  Furthermore, the payments did not conform with the contours of the Agreement.  The Agreement required that the Castillos make an initial payment of $3,332.63 on or before December 1, 2010, in addition to $2,355.89 on the first of every month beginning on December 1, 2010, and until the note and modification were paid in full.  Yet, the Castillos allege that they made the following payments to Ocwen: $3,332.63 on November 30, 2010; $3,332.63 on February 10, 2011; two separate payments of $3,284.15 on February 22, 2011; $3,503.46 on March 15, 2011; and $3,284.15 on May 16, 2011. These payments do not match the outlined payment schedule, so the Castillos'

actions were not "unequivocally referable" to the Agreement.  Moreover, the Castillos do not allege that they made a single payment in June, July, August, or September 2011, and the absence of these payments prevents the plausible inference that the couple had "no other design than to fulfill the particular agreement." *Exxon Corp.*, 82 S.W.3d at 439–40.  Thus, the district court correctly declined to apply the partial performance doctrine in this matter.

The Castillos failed to plead the facts necessary to establish the first element of their breach of contract claim: the existence of a valid contract.  Since there is no valid contract, we need not evaluate the Castillos' second  argument that their breach was justified because Ocwen allegedly breached the contract first.  Lastly, we reject the Castillos' generalized assertions that their pleadings satisfied Federal Rule of Civil Procedure 8 and placed Ocwen and Freddie Mac on sufficient notice of the claims against them.  This argument is disingenuous given that the Castillos plainly did not articulate any facts, let alone plausible facts, to support several elements of their enumerated claims.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.