

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00034-CV

SHERYL BUCHANAN                                                APPELLANT

V.

COMPASS BANK                                                    APPELLEE

----------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 352-239854-09

----------

## MEMORANDUM OPINION[1]

----------

Appellant Sheryl Buchanan appeals the trial court's grant of summary judgment on her claims regarding appellee Compass Bank's foreclosure on property located at 4674 Slippery Rock Drive, Fort Worth, Texas. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

On November 29, 2006, Buchanan executed two notes in favor of Compass to purchase the property, secured by a deed of trust. In 2008, Buchanan began discussions with Compass regarding a loan modification or other mortgage assistance. Buchanan eventually defaulted, and Compass accelerated payment of the notes. Buchanan filed this lawsuit in August 2009. On September 1, 2009, Compass purchased the property at a foreclosure sale. The same day, but after the foreclosure sale, the trial court granted a temporary restraining order.

In September 2009, Buchanan and Compass entered into a Rule 11 agreement in which Compass agreed not to file the foreclosure for thirty days so that Buchanan could again attempt a loan modification. Buchanan claims that she repeatedly submitted her financial information but that Compass provided her with wrong fax numbers and did not return her phone calls. After the thirty-day period, Compass filed the substitute trustee's deed. In August 2010, Compass began eviction proceedings against Buchanan.

The protracted legal battle continued through October 2012, when Compass filed a no-evidence motion for summary judgment on all of Buchanan's claims.[2] The trial court granted the motion, and Buchanan appealed.

---

[2]Buchanan sued for breach of contract and anticipatory breach of contract; violations of the Equal Credit Opportunity Act, the Texas Debt Collection Practices Act, and the Fair Housing Act; violations of "Texas Insurance Law"; unreasonable collection efforts; negligence, negligent misrepresentation, and

## Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if

---

gross negligence; wrongful foreclosure and wrongful eviction; and invasion of privacy. Buchanan sought an accounting of all transactions on her mortgage loans and a declaratory judgment that Compass violated the terms of the deed of trust and the notes. She also sued to quiet title and for trespass to try title.

Compass countersued for breach of contract of the notes and the Rule 11 agreement, unjust enrichment, and trespass. It later nonsuited all of its claims against Buchanan.

reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

## Discussion

Buchanan argues there are genuine issues of material fact that preclude summary judgment on seven of her causes of action against Compass.

## I. Breach of contract

In her first issue, Buchanan argues that Compass breached both the Rule 11 agreement and the deed of trust.

### A. Rule 11 agreement

The Rule 11 agreement, as stated by Compass in the trial court and agreed to by the parties on September 14, 2009, was as follows:

> The bank agrees that [it] will give Ms. Buchanan 30 days from today's date to provide the . . . information necessary to consider a loan modification.

> . . . In exchange for that[,] the bank will agree not to file the foreclosure [or] substitute trustee's deed, nor take any action to evict Ms. Buchanan from her home[,] and will preserve the status quo during the 30-day time period.

4

At the end of the 30-day time period[,] the parties will have decided whether or not a loan modification can be entered into.

. . . If for some reason the parties are not able to enter into a modification—and no guarantee of modification is made at this point in time—. . . the bank would then move forward in filing its deed and take the other actions it's entitled to under the deed of trust by law.

Buchanan argues, "Compass breached the [Rule 11] agreement by not specifying to Ms. Buchanan where to send the documents after telling her that the first fax number was incorrect. Compass breached the Rule 11 agreement by not considering Ms. Buchanan for a loan modification as promised."

Buchanan testified that she faxed her information to a number on a business card that Compass gave to her at the hearing. She testified that a Compass representative confirmed receipt of some of the information but not all. Buchanan's evidence includes a letter she received from Compass dated October 20, 2009, stating that it reviewed her information and that it was "unable to arrive at a solution to restructure [her] debt." Buchanan's evidence fails to raise a fact issue regarding whether Compass received her information or whether it considered her for a loan modification. Instead, the evidence shows that Compass reviewed her information and denied her request for a modification.

Buchanan has also not raised a fact issue regarding how any breach of the Rule 11 agreement by Compass caused her complained-of injuries. *See Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 397 (Tex. App.—El Paso 1998, pet. denied) ("The absence of this causal connection between the alleged

5

breach and the alleged damages will preclude recovery."). There is no evidence that the denial of her modification request was because Compass did not receive her information or because it refused to consider any information it had received. In other words, there is no evidence that Compass would have granted her a loan modification that would have been acceptable to Buchanan and that would have prevented her eviction but for the lack of the documents that Buchanan alleges.[3] We therefore overrule this portion of Buchanan's first issue.

**B. Deed of trust**

Buchanan argues that Compass breached the deed of trust because the delinquency and acceleration notices it sent did not conform to the property code. Section 51.002(d) of the property code requires that the mortgage servicer must serve a debtor "with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given." Tex. Prop. Code Ann. § 51.002(d) (West 2014). Buchanan claims that the property code requires that the notices state the exact amount of the delinquency, and because Compass's notices did not contain the exact amount, the twenty-day period to cure was not triggered.

We find no such language in the statute that requires notices to include the exact amount owed. *See Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-

---

[3]Buchanan's deposition testimony was that she was offered a loan modification in April 2011, and she did not accept it.

6

02347-L, 2012 WL 5363424, at *19 (N.D. Tex. Oct. 31, 2012) ("With regard to Plaintiffs' argument that Wells Fargo's June 2010 notice was defective because it did not state the amount needed to cure the default, section 51.002 contains no such requirement, and Plaintiffs have not pointed the court to any authority that Texas courts have construed section 51.002 to include such a requirement."), *vacated in part*, 3:10-CV-02347-L, 2013 WL 2090307 (N.D. Tex. May 14, 2013); *Rabe v. Wells Fargo Bank, N.A.*, No. 4:11-CV-787, 2013 WL 5458068, at *7 (E.D. Tex. Sept. 30, 2013) ("There is no applicable statute or regulation that requires a notice of acceleration to state the amount necessary to cure a default."). Buchanan admits to receiving the notices, does not argue they are otherwise defective, and acknowledged that she never offered to pay the full amount due.[4] Buchanan has therefore failed to raise a fact issue regarding whether Compass breached the terms of the deed of trust. We overrule the remainder of Buchanan's first issue.

## II. Violations of the Texas Debt Collection Act

In her second issue, Buchanan argues that Compass violated sections 392.301(a)(8), 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) of the Texas Debt Collection Act (the TDCA). *See* Tex. Fin. Code Ann. §§ 392.301(a)(8), .303(a)(2), .304(a)(8), (19) (West 2006).

---

[4]She testified that she had offered to pay "a little over half of what was delinquent."

7

Section 392.301(a)(8) prohibits a debt collector from "threatening to take an action prohibited by law." *Id.* § 392.301(a)(8). Buchanan's argument under this section rests solely on her claims that Compass breached the Rule 11 agreement and the deed of trust for the same reasons she argued in her first issue. Because we held that Buchanan did not raise a fact issue that Compass breached those contracts, we hold that she did not raise a fact issue that Compass breached this section of the TDCA. We overrule this portion of her second issue.

Section 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." *Id.* § 392.303(a)(2). Buchanan argues that Compass imposed unauthorized charges, including "Late Charges, Property Inspections, Appraisals, and Current Attorney Fees." However, the deed of trust, which Buchanan attached to her response to Compass's motion for summary judgment, shows that Buchanan agreed to pay late charges, "fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection[,] and valuation fees," and "all expenses incurred in pursuing the remedies provided . . . including, but not limited to, reasonable attorney's fees and cost of title evidence." Buchanan does

8

not explain how any of the complained-of charged fees (none of which she specifically identifies) fall outside the obligations that she expressly authorized in the deed of trust. We therefore overrule this portion of her second issue.

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." *Id.* § 392.304(a)(8). Buchanan argues that Compass misrepresented the extent of her debt "because Compass failed to allow Ms. Buchanan to pay the arrearage after acceleration and since it failed to give Ms. Buchanan 10 days['] notice to identify and cure the delinquency as required by the Deed of Trust." As we noted above, there is no evidence that Buchanan ever offered to pay the arrerage. She testified that she had offered to pay "a little over half of what was delinquent" and that she had never offered to pay off the full amount of the debt. Buchanan does not explain how the alleged lack of notice to identify and cure the delinquency misrepresented the character, extent, or amount of her debt. But even if she had explained, the two notices that she received and attached to her response both gave her more than twenty days' notice of the foreclosure sale.[5] To the extent that Buchanan's argument that Compass did not provide her adequate notice is

---

[5]The notices of acceleration, which Buchanan attached to her response to Compass's motion, were dated June 15, 2009, and August 10, 2009. The June 15, 2009 letter states that the foreclosure sale was scheduled for July 7, 2009, twenty-two days after the letter was sent. The August 10, 2009 notice states that the foreclosure sale would occur on September 1, 2009, also twenty-two days after the letter was sent.

9

based on her claim that Compass was required to state the exact amount due in its notices of acceleration, we have overruled that argument.

Section 392.304(a)(19) prohibits a debt collector from "using . . . false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* § 392.304(a)(19). Buchanan argues that Compass "misrepresented to her that she qualified for a loan modification and that her monthly payment would be $1,600 with a lower interest rate."

Buchanan's evidence of this alleged misrepresentation is her deposition testimony that David Johnson from Compass Bank told her over the phone that the bank would be able to modify the terms of her loan. Johnson told her that her monthly payment would be $1,600 a month, but she was unable to recall any of the other terms of the agreement or whether she had even been informed of the other terms. Buchanan also acknowledged that she understood that the agreement must be in writing and that she had never received any documents from Compass evincing an agreement with the terms of her loan modification. The only written notes regarding an agreement are some phone log notes from Compass showing that Buchanan told the Compass representative that she "can send $1,600.00 by the 1st of every month" and that "she is working with David Johnson at the Branch and they already have something settled and it should be finished by April 1st." Nothing in the phone log notes shows that Compass had agreed to the modification terms or had sent Buchanan a written agreement.

10

These representations by Compass related to Buchanan's loan modification, not an attempt to collect a debt. *See Singha v. BAC Home Loans Servicing, LP*, No. 4:10-CV-692, 2011 WL 7678684, at *7–8 (E.D. Tex. June 1, 2011) (holding that representations relating to loan modifications do not constitute an attempt to collect a debt). Further, all of the representations were oral and barred by the statute of frauds.[6] *See* Tex. Bus. & Comm. Code Ann. § 26.02(b) (West 2009) ("A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."); *Foster v. Mut. Sav. Ass'n*, 602 S.W.2d 98, 100 (Tex. Civ. App.—Fort Worth 1980, no writ) (holding that modifications to the amount of monthly payments and interest rate were material modifications of the loan agreement and fell within statute of frauds). We therefore overrule the remainder of Buchanan's second issue.

---

[6]In her reply brief, Buchanan argues that the "statute of frauds has no bearing on claims under the TDCA," *Knigge v. Bank of Am. Corp.*, No. 4:11-CV-295, 2012 WL 629093, at *4 (E.D. Tex. Feb. 27, 2012) *report and recommendation adopted*, 2012 WL 1108337 (E.D. Tex. Mar. 30, 2012) (slip copy). *Knigge* appears to be in the minority of cases addressing the applicability of the statute of frauds to the TDCA. *See Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 793 (N.D. Tex. 2013) (noting that only three cases had addressed the issue, two of which held that the statute of frauds applied). We have found no cases following *Knigge,* and it is not controlling here.

11

## III. Negligent misrepresentation

In her third issue, Buchanan argues that the trial court erred in dismissing her negligent misrepresentation claim because she "presented evidence that Compass represented, through the Rule 11 Agreement[,] that it was going to consider Ms. Buchanan for a loan modification" and because "Compass represented that it did not receive the information to review Ms. Buchanan for the loan modification." Both these negligent misrepresentation claims are premised wholly on the same grounds as her breach of contract claims. Because we have already held that there is no evidence to support these claims, we also overrule this issue.

## IV. Invasion of privacy

In her fourth issue, Buchanan argues that the trial court erred by granting summary judgment on her invasion of privacy claim because "Compass intentionally intruded into Ms. Buchanan's home, examining and taking pictures of her personal property, and then removed her property and placed it near the street."

Texas courts have found some acts undertaken during an eviction may support an invasion of privacy cause of action, but only when the intrusion was "unreasonable, unjustified, or unwarranted." *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 84 (Tex. App.—El Paso 1998, pet. denied) (holding that phone calls were intrusive when they were made repeatedly, prior to normal waking hours, after normal retiring hours, and to the debtor's place of work).

12

Buchanan argues that Compass "had no authority and no permission to be on the property," presumably because she challenges the legality of the foreclosure. However, as we explained above and will further explain below, Compass acted within its contractual rights when it foreclosed on Buchanan's property, purchased the property at the foreclosure sale, and evicted Buchanan. Removing Buchanan's personal property from the house was therefore not unreasonable, unjustified, or unwarranted so as to support a claim for invasion of privacy. We therefore overrule Buchanan's fourth issue.

## V. Wrongful foreclosure

In her fifth issue, Buchanan argues that the trial court erred by granting summary judgment on her wrongful foreclosure claim. The elements of a wrongful-foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). Buchanan argues that the alleged defects in the foreclosure were that "Compass breached the Deed of Trust contract by failing to give Ms. Buchanan the required 10 days['] notice to identify and cure the delinquency as required by the Deed of Trust due to the fact that Compass did not provide the exact amount to cure" and that "Compass breached the Rule 11 Agreement by not reviewing her for a loan modification and instead told her they did not receive her documents." We have already overruled these arguments, and we overrule them here. Because

13

Buchanan has failed to support the defect element of her wrongful foreclosure claim, we need not address her argument that the selling price was grossly inadequate. *See* Tex. R. App. P. 47.1; Tex. R. Civ. P. 166a(i).

**VI. Negligence and gross negligence**

In her sixth issue, Buchanan argues that the trial court erred by granting summary judgment on her negligence and gross negligence claims. The elements of a negligence claim are: (a) a legal duty owed by one person to another; (b) a breach of that duty; and (c) damages proximately resulting from the breach. *See Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995). To show gross negligence, a litigant must show that:

> (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231 (Tex. 2004). To establish malice, a claimant must show that a party acted with "a specific intent . . . to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (West 2008).

Buchanan's argument on this issue consists of two sentences. She states, "Compass intentionally intruded into Ms. Buchanan's home and Compass carelessly and recklessly removed and placed Ms. Buchanan's personalty near the street causing substantial damage to her personalty in the process." The

14

only evidence to which she points are photographs of personal property in the house and on the driveway. Buchanan does not identify what duty Compass owed to Buchanan. Presumably, these claims rest on the same underlying complaint as the rest of her causes of actions: that Compass acted wrongfully in the foreclosure and eviction proceedings. As we have held that Buchanan has not identified a wrongful act by Compass, we likewise cannot hold that Compass breached a duty owed to Buchanan so as to support her negligence claims. We overrule Buchanan's sixth issue.

## VII. Suit to quiet title and trespass to try title

In her seventh issue, Buchanan argues that the trial court erred by granting summary judgment on her suit to quiet title and her trespass to try title claims. Buchanan argues that the foreclosure sale was void and she therefore has superior title to the property. We have already overruled Buchanan's arguments that Compass did not have the right to foreclosure and that there were defects in the foreclosure sale. Because this issue rests entirely on those arguments, we overrule it.

## Conclusion

Having overruled Buchanan's seven issues on appeal, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DELIVERED:  January 15, 2015

16